UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LYMAN, MARC BAUS,
VINCENT BRADY, DENNIS GABEL,
GORDON MCCARDY, JASON
PIERCE, JAMES RITTMANIC,
MICHELLE SHAWLEY, RICHARD
SHAWLEY, THERMON STACY,
RONNIE SWINDELL, TIMOTHY
THUERING, JUDSON
WESSBECHER, and JOHN WILEY, on
behalf of themselves and all others
similarly situated,

                Plaintiffs,

v.

FORD MOTOR COMPANY,

                Defendant.
_____/

Case No.: 21-cv-10024
Hon. Gershwin A. Drain

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION OF CERTAIN PLAINTIFFS' CLAIMS [#29],
GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
[#30], GRANTING PLAINTIFFS' AMENDED MOTION FOR THE
APPOINTMENT OF INTERIM CLASS COUNSEL [#33] AND FINDING
MOTIONS [#16, #24] MOOT**

## I.    INTRODUCTION

      Presently before the Court is the Defendant Ford Motor Company's Motion
to Compel Arbitration of Certain Plaintiffs' Claims and Defendant's Motion to

Dismiss Plaintiffs' First Amended Class Action Complaint ("FACC").  These

matters are fully briefed,[1] and a hearing was held on March 16, 2022.  For the

reasons that follow, the Court grants Defendant's Motion to Compel Arbitration of

Certain Plaintiffs' Claims and grants in part and denies in part Defendant's Motion

to Dismiss First Amended Class Action Complaint.

Also, before the Court is the Plaintiffs' Amended Motion for the

Appointment of Interim Class Counsel.  Ford has indicated it will not take a

position at this time on Plaintiffs' Motion for the Appointment of Interim Class

Counsel.  Upon review of the Plaintiffs' present motion, the Court concludes that

oral argument will not aid in the disposition of this matter.  Accordingly, the Court

will resolve Plaintiffs' Motion on the brief.  *See* E.D. Mich. L.R. 7.1(f)(2).  For the

reasons that follow, the Court grants Plaintiffs' Motion for the Appointment of

Interim Class Counsel.

## II.    FACTUAL BACKGROUND

Plaintiffs David Lyman (New York), Marc Baus (New Jersey), Vincent

Brady (California), Dennis Gabel (Texas), Gordon McCardy (Michigan), Jason

Pierce (Florida), James Rittmanic (Illinois), Michelle and Richard Shawley

(Pennsylvania), Thermon Stacy (West Virginia), Ronnie Swindell (Florida),

---

[1] On January 7, 2022, Defendant filed a Notice of Supplemental Authority
Regarding its Pending Motion to Compel Arbitration of Certain Plaintiffs' Claims.
*See* ECF No. 55.  On January 19, 2022, this Court granted Plaintiffs' Motion for
Leave to File a Notice of Supplemental Authority.  *See* ECF No. 58.

Timothy Thuering (Ohio), Judson Wessbecher (Illinois), John Wiley (Florida) and members of the classes they propose to represent purchased or leased Ford F-150 pickup trucks, beginning with Model Year 2018. Ford's F-Series truck has been the best-selling vehicle in the United States for 37 years. The F-Series maintains a dominant market share, representing nearly one-third of all pickup trucks sold in the United States. *Id*. at PageID.377.

In 2018, Ford debuted its new and enhanced F-150 line equipped with a 5.0L engine named the "Coyote" by Ford. ECF No. 19, PageID.381. The 5.0L engine is a modular V-8 piston engine with Port Fuel Injection and Direct Fuel Injection, four-valve per cylinder, dual overhead cylinder heads cast, forged steel crankshaft and a high 12:0:1.0 compression ratio. *Id*. Ford advertised the F-150's 5.0L engine as "reengineered, upgraded, improved[,] . . . the most advanced F-150 engine lineup ever." *Id*. The "enhanced" 5.0L engine was highlighted as having increased horsepower and torque and improved fuel efficiency. The 2018 F-150 product brochure promised advanced, durable materials that inhibited corrosion and "[o]ptimized fuel usage during city driving." *Id*. at PageID.378. Similarly, the 2019 F-150 marketing brochure emphasizes the brutal testing regimen and 10 million miles of customer equivalent miles of testing, "engineered for the long haul." *Id.*

Plaintiffs allege the 5.0L engine's piston ring assembly and cylinder coating are defective in the Class Vehicles and engine oil is consumed at an excessive rate ("Oil Consumption Defect").  As a result, Plaintiffs claim the engine is not capable of maintaining the proper level of engine oil based on the care and maintenance instructions set forth in the Owner's Manual.  *Id.*  Instead, Plaintiffs must monitor the oil level more often than what is recommended by the Manual and add more oil to the engine more frequently than what is usually required to keep an engine properly lubricated.  *Id.*  Plaintiffs claim the Oil Consumption Defect is a serious issue for vehicle longevity and safety.  It can cause premature wear on an engine, lead to stalling and even engine failure—increasing the risk of accident and injury.  *Id*. at PageID.367-368.

Plaintiffs maintain Ford has known about the Oil Consumption Defect for years because of numerous customer complaints, information from dealers, complaints from the National Highway Traffic Safety Administration ("NHTSA"), and its own internal warranty and service records describing the excessive oil consumption problem.  *Id*. at PageID.368.  In many instances Ford has refused to disclose the defect when a Class Vehicle is brought in for service because it is displaying symptoms consistent with excessive oil consumption.  *Id*.  Ford also refuses to adequately address the needed repairs.  It either ignores the defect or masks it until costly repairs are needed, sometimes past the warranty period.

4

Plaintiffs claim they would not have purchased or leased the Class Vehicles or would have paid substantially less to do so if Ford had disclosed the Oil Consumption Defect. *Id.* at PageID.370.

Five of the named Plaintiffs in the FACC purchased their Class Vehicles through financing from non-party Ford Motor Credit Company ("FMCC"). Plaintiffs Gabel (Texas), McCardy (Michigan), Pierce (Florida), Rittmanic (Illinois), and Wessbecher (Illinois) each signed a Motor Vehicle Retail Installment Sales Contract ("RISC") containing an arbitration provision in connection with the purchase of the Class Vehicles.

For example, Gabel, McCardy, and Rittmanic signed an RISC ("RISC1") that states in relevant part: "Either you or we may choose to have any dispute between us decided by arbitration." ECF No. 29, PageID.883. RISC1's arbitration provision further provides:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action[.]

*Id*. The RISC ("RISC2") signed by Plaintiffs Pierce and Wessbecher similarly states: "Either you or Creditor ("us" or "we")(each, a "Party") may choose at any

time, including after a lawsuit is filed, to have any Claim related to this contract

decided by arbitration." *Id.*, PageID.896.  The RISC further advises that:

> Claims include but are not limited to the following:  1)  Claims in
> contract, tort, regulatory or otherwise; 2)  Claims regarding the
> interpretation, scope or validity of this provision, or arbitrability of
> any issue except for class certification; 3)  Claims between you and
> us, you/our employees, agents, successors, assigns, subsidiaries, or
> affiliates; 4) Claims arising out of or related to your application for
> credit, this contract, or any resulting transaction or relationship,
> including that with the dealer, or any such relationship with third
> parties who do not sign this contract."

*Id.*  Both RISC1 and RISC2 expressly state the arbitration will be governed by the

Federal Arbitration Act.

Plaintiffs initially filed a Complaint on behalf of three named plaintiffs

purporting to represent F-150 owners from three states (CA, NY, and OH) and

asserting 12 claims.  Ford moved to dismiss that Complaint in its entirety, and in

response, Plaintiffs filed their FACC, adding eleven new Plaintiffs—for a total of

fourteen Plaintiffs representing ten states (CA, FL, IL, MI, NJ, NY, OH, PA, TX,

and WV)—asserting thirty-nine claims on behalf of a nationwide class or state

subclasses seeking damages, declaratory and injunctive relief.

## III.   LAW & ANALYSIS

### A.  Defendant's Motion to Compel Arbitration of Certain Plaintiffs' Claims

Defendant seeks an order compelling the five named Plaintiffs who signed

RISCs to submit their claims to binding arbitration.  Defendant primarily relies on

the recent Sixth Circuit decision, *Swiger v. Rosette*, 989 F.3d 501 (6th Cir. 2021), to argue the delegation clauses in the arbitration agreements require that the arbitrator—and not the Court—decide whether Ford can enforce the arbitration agreement in the RISCs as a non-signatory.

The Federal Arbitration Act ("FAA") "reflects the basic principles that 'arbitration is a matter of contract' and that contracts must be enforced 'according to their terms.'" *Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  It provides no authority for district courts to exercise discretion, "but instead mandates that district courts [] direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Parties may agree to have an arbitrator not only resolve the merits of a dispute, "but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 529 (2019) (internal quotation marks and citation omitted).  Where an agreement contains a so-called delegation provision, the court must first determine whether a

valid arbitration clause exists.  *Id*. at 530; *see also Chaudhri v. StockX, LLC (In re StockX Customer Data Sec. Breach Litig.)*, 19 F.4th 873, 885-86  (6th Cir. Dec. 2. 2021).

Here, Plaintiffs concede the existence of a valid arbitration agreement. Additionally, the arbitration provisions in the RISCs clearly and unmistakably show an intent to arbitrate issues of arbitrability.  RISC1–applicable to Plaintiffs Gabel (Texas), McCardy (Michigan), and Rittmanic (Illinois)–provides that "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) . . . shall . . . be resolved by neutral, binding arbitration and not by a court action."  RISC2's arbitration clause defines claims subject to arbitration to include any regarding "the interpretation, scope or validity of this provision, or arbitrability of any issue except for class certification."  Both RISCs expressly note arbitration is governed by the AAA's rules.  *See Blanton,* 962 F.3d at 846 (holding incorporation of the AAA's rules provides clear and unmistakable evidence the parties agreed to arbitrate arbitrability).

In response to Defendant's request to compel arbitration, Plaintiffs argue Ford cannot enforce the arbitration agreements as a non-signatory.  However, the Sixth Circuit in *Swiger* held, "a nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability[.]"  *Swiger v. Rosette*, 989 F.3d

501, 507 (6th Cir. 2021). Plaintiffs argue this case is distinguishable from *Swiger* and *Blanton* because they are challenging the delegation clauses specifically, unlike the *Swiger* and *Blanton* plaintiffs, who either conceded the issue or "challenged the enforceability of the whole arbitration agreement and nowhere mentioned the delegation clause." *Swiger*, 989 F.3d at 507.

Yet, Plaintiffs' challenges do not go to the validity of the delegation clauses. Rather, they are simply challenging Ford's standing to enforce arbitration as a non-signatory to the RISCs;however, *Blanton*, *Swiger,* and *Chaudhri* require that this very issue be submitted to the arbitrator because it is an arbitrability issue. *Swiger*, 989 F.3d at 507; *Blanton*, 962 F.3d at 848. "[S]pecifically challeng[ing] the delegation provision . . . is not a mere pleading requirement." *Chaudhri*, 19 F.4th at 885-86 (explaining that district courts "must look to the substance of the challenge[,]" and where the basis of the challenge "affects the validity or enforceability of the whole contract, as well as the agreement to arbitrate and its delegation provision[,]" the challenge is for the arbitrator to decide).

In this case, the basis of Plaintiffs' challenge–Defendant's standing to invoke the delegation provision–goes to the enforceability of the whole arbitration agreement. Therefore, it is an arbitrability issue that must go to the arbitrator to decide. *Id*. "[W]here a signatory oppose[s] arbitration by arguing that the non-signatory seeking to compel arbitration lacked ability to invoke the arbitration

agreement," the challenge "concern[s] an issue of enforceability under the delegation provision in the contract, and thus it [i]s a question of arbitrability" delegated to the arbitrator by the arbitration agreement.) *Id.* at 883. (internal quotation marks omitted). Here, the arbitrator must determine whether Defendant may enforce the arbitration agreement as a non-signatory in the first instance. Because the Court concludes the issue of whether Defendant can enforce the arbitration agreement as a non-signatory is an issue for the arbitrator, the Court declines to consider Defendant's alternate arguments concerning Ford's right to invoke the arbitration agreement in the RISCs as a third-party beneficiary or under principles of equitable estoppel.

### B. Defendant's Motion to Dismiss[2]

### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is

---

[2] Because the Court stays the Plaintiffs' claims subject to the RISCs' delegation clause, the Court will only address Defendant's arguments in support of dismissal as to Plaintiff David Lyman's (NY), Marc Baus' (NJ), Vincent Brady's (CA), Michelle and Richard Shawley's (PA), Thermon Stacy's (W. Va.), Ronnie Swindell's (FL), Timothy Theuring's (OH), and John Wiley's (FL) claims.

and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

### 2. Nationwide Class Claims

Defendant argues Plaintiffs do not have standing to assert their nationwide class allegations because they only suffered injuries in the states within which they reside, and do not claim any injury in the remaining states. Defendant maintains there is no basis to permit claims for which no plaintiff has standing to proceed to class certification. Ford relies on *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011), in support of its argument. In response, Plaintiffs indicate they will pursue their common law counts on a state-by-state basis at this time. Accordingly, the Court will dismiss Counts 2 through 6.

As to Plaintiffs' MMWA claim, the Sixth Circuit Court of Appeals has not definitively resolved whether standing to raise nationwide claims should be resolved at the Rule 12(b)(6) stage as in *In re Packaged Ice Antitrust Litig.*, *supra*, and *Anger v. Accretive Health, Inc.*, No. 14-CV-12864, 2015 U.S. Dist. LEXIS 113637, at *5 (E.D. Mich. Aug. 27, 2015), or at the class certification stage as in *Counts v. GM, LLC*, 237 F. Supp. 3d 572, 587 (E.D. Mich. 2017) and *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1000 (E.D. Mich. 2014), when the district court has determined the plaintiffs have standing to bring their claims in their individual capacities.

In *Counts*, the court held "defer[ing] the standing inquiry regarding the claims advanced on behalf of unnamed class members until class certification provide[s] the best approach." *Counts*, 237 F. Supp. 3d at 587.  In so concluding, the *Counts* court noted the individual plaintiffs had standing to bring claims on their own behalf and their allegations center on "decisions made centrally by GM[,][thus] [p]laintiffs will seek substantially the same information regardless of whether they are asserting claims only on their own behalf or on behalf of a class." *Id.* at 587-88.  As such, the defendant will not incur "significantly greater discovery expenses" as a result of deferring the standing analysis to the class certification stage.  *Id*. at 588.

Here, the Court agrees with the analysis in the *Counts* decision.  Ford's challenge to the Plaintiffs' standing to pursue an MMWA claim on behalf of a national class is premature.  Plaintiffs have established standing to pursue their express warranty claims in their individual capacities as will be more fully discussed herein and should be permitted to proceed to discovery.  *See id.* ("The question of whether [the plaintiff] may bring claims on behalf of the unnamed class members is an issue that is properly addressed via a motion for class certification."); *see also Jimenez v. Allstate Indem. Co.*, No. 07-CV-14494, 2010 U.S. Dist. LEXIS 95993, at *15 (E.D. Mich. Sep. 15, 2010) (declining to dismiss a nationwide class based on state contract law because the possibility that plaintiffs

would later show variances in state law did not defeat certification.).  Therefore, the Court declines to dismiss Count 1 based on lack of standing.  Defendant may raise its argument to dismiss the MMWA claim at the class certification stage.

Ford also argues that Plaintiffs' MMWA claim fails because Plaintiffs failed to exhaust the informal dispute resolution process contained in Ford's Limited Warranties.  Under the MMWA, where a written warranty contains a requirement that a consumer report to an informal dispute settlement procedure before pursuing an MMWA remedy, a class may not proceed if the named Plaintiffs did not initially resort to that procedure.  *See* 15 U.S.C. § 2310(a)(3).

Plaintiffs were not required to exhaust Ford's informal dispute process because it was not adequately disclosed.  Ford was required to "disclose clearly and conspicuously . . . on the face of the written warranty," "[a] statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by [the MMWA]."  16 C.F.R. § 703.2(b)(3).  The phrase "on the face of the warranty" means "if the warranty is included as part of a longer document, such as a use and care manual, the page in such document on which the warranty text begins."  16 C.F.R. § 703.1(h)(2).

However, Ford did not disclose its informal dispute resolution process until page seven of its warranty document, and the text of the warranty begins at the bottom of the eighth page.  Page seven is not the page upon which the warranty

text begins. Thus, because Ford failed to apprise the Plaintiffs of the required exhaustion via Ford's BBB Auto Line program on the first page of its warranty, the Plaintiffs were not required to exhaust Ford's procedure before filing their MMWA claim. *See Carrillo v. BMW of N. Am., LLC*, No. CV 19-8702, 2021 WL 2621208, at *5 (C.D. Cal. Jun 14, 2021) ("Because the information regarding BBB Auto Line was not on the first page of any of the warranties outlined in the Booklet, Carrillo was not required to exhaust the informal dispute resolution procedure, and his claim is not barred.").

### 3. Non-Warranty Claims

Next, Ford argues Plaintiffs' Fraud, Consumer Protection, and Unjust Enrichment claims fail because Plaintiffs have not adequately alleged Ford had knowledge of a defect, let alone a safety defect.

Ford maintains customer complaints in and of themselves do not support an inference that a manufacturer was aware of a defect. *See Wilson v. Hewlett-Packard*, 668 F.3d 1136, 1147 (9th Cir. 2012). Ford's reliance on *Wilson* is misplaced because the plaintiffs in that case sought to infer the defendant's knowledge of a laptop defect by pointing only to "fourteen customer complaints," twelve of which were undated. *Id*. at 1148. Conversely, in this case, Plaintiffs' FACC relies upon customer complaints in addition to other sources of information such as repair records, warranty claims and testing.

Additionally, Ford asserts that Plaintiffs' allegations fail to demonstrate that Ford received notice of the customer complaints.  However, Ford ignores the FACC's allegations referencing twenty-seven NHTSA complaints regarding excessive oil consumption symptoms in the Class Vehicles.  ECF No. 19, PageID.401-410.  The FACC further describes other reports of engine concerns indicative of the Oil Consumption Defect such as persistent, unexplained rattling and total engine failure in new vehicles with low mileage.  *Id.* at PageID.410.  The FACC discusses online customer forums such as "Ford F-150 Forum-Community of Ford Truck Fans," where some 1,800 comments are directed to a thread entitled "excessive oil consumption."  *Id*. at PageID.411.

The FACC also details nine Technical Service Bulletins ("TSBs") and two Special Service Messages ("SSMs") related to the Oil Consumption Defect.  Each of these notifications address performance issues in F-150s pickup trucks that are triggered by under-lubrication in 5.0L engines such as ticking and knocking noises. *Id*., PageID.385-400.  TSBs identifying technical issues can be indicative of a manufacturer's knowledge.  *See Francis v. GM, LLC*, 504 F. Supp. 3d 659, 684 (E.D. Mich. 2020); *Reninger v. Hyundai Motor Am*., 122 F. Supp. 3d 888, 900 (N.D. Cal. 2015);*MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014).  While the TSBs and SSMs may not use the term "oil consumption defect," knowledge can nonetheless be inferred even where the TSB itself does not

16

make the connection to the defect explicit. *See Francis*, 504 F. Supp. 3d at 659.

In *Francis*, the plaintiffs brought a class action against General Motors alleging a defective transmission. *Id*. at 667. Rejecting the defendant's argument that the plaintiffs' allegations failed to sufficiently allege knowledge, the *Francis* court relied on the manufacturer's TSBs, which detailed issues such as shaking, shuddering, and delayed shifting. *Id*. at 670-71. The TSBs in *Francis* did not specifically identify a "transmission defect," but outlined problems that might occur as a result of the defect. The *Francis* court held that because "[t]hose TSBs consistently describe the symptoms of the defect in similar terms to the accounts in the [complaint], [they] adequately alleg[e] that GM was aware of and attempting to cope with the same defect that the plaintiffs have described." *Id*. at 683.

Similarly, in this case, Plaintiffs allege the TSBs describe various symptoms of the Oil Consumption Defect, including a "ticking noise at idle after an engine oil change" and a "rattll[ing] noise during a deceleration," both purportedly caused by the defect in the Class Vehicles. ECF No. 30, PageID.1262, 1264. Ford's contention that many of the TSBs were issued after the Plaintiffs' purchased their vehicles is also unpersuasive. It is permissible for courts to infer knowledge of a defect preceding the issuance of a TSB because "it is reasonable to infer that such technical guidance would be prompted by an accretion of knowledge that would take some time to gather persuasive weight, and more time necessarily would be

taken up by investigating likely causes of a problem and formulating a remedy." *Francis*, 504 F. Supp. 3d at 684; *see also Parrish v. Volkswagen Grp. Of Am., Inc.*, 463 F. Supp. 3d 1043, 1058 (C.D. Cal. 2020) ("[A] manufacturer must receive complaints or data raising an issue and then must investigate the issue before issuing a [TSB], [and thus] it is reasonable to infer that [a] manufacturer[] knows of the issue prior to release of the . . . TSB."); *Philips v. Ford Motor Co.*, No. 1402989, 2015 WL 4111448, at *9 (N.D. Cal. Jul. 7, 2015) (same).

Finally, Ford's argument that Plaintiffs fail to allege Ford's knowledge of the safety implications of the Oil Consumption Defect is similarly unpersuasive. The FACC alleges that insufficient engine oil will cause the engine to break down or seize up—either of which presents profound safety risks.   ECF No. 19, PageID.381-394.

Accordingly, Plaintiffs have sufficiently alleged Ford's knowledge of the Oil Consumption Defect, and Ford is not entitled to dismissal of Plaintiffs' fraud, consumer protection and unjust enrichment claims on this basis.

### 4. Express Warranty Claims

Next, Ford argues Plaintiffs' express warranty claims fail because Ford's warranty does not cover design defects and Plaintiffs' claims "have all of the trappings of a design defect case."  ECF No. 30, PageID.1095.  Here, the FACC alleges that the Oil Consumption Defect may be the result of poor manufacturing,

poor design, or a combination of both.  ECF No. 19, PageID.463.  Specifically,

Plaintiffs allege the piston ring assembly, and the cylinder coating are defective

because they permit engine oil to seep into the combustion chamber of the engine,

where it is burned off during the combustion cycle.  Ford complains that a

manufacturing defect would not be present in all of the Class Vehicles, however at

this stage the Court cannot conclude as a matter of law Plaintiffs have only alleged

a design defect with respect to the Oil Consumption Defect.  "[I]t is plausible that a

manufacturing defect might occur on a sufficiently wide scale to affect all, or

nearly all of the [c]lass [v]ehicles.  A manufacturing defect is simply a defect that

occurs when a product does not conform to the manufacturer's intended design."

*Granillo v. FCA US LLC*, No. 16-153, 2016 WL 9405772, at *14 (D.N.J. Aug. 29,

2016).  Defendant's argument is best suited for later stages of the case after

Plaintiffs have had a chance to conduct discovery.  *See Coba v. Ford Motor Co*.,

932 F.3d 114, 123 (3d Cir. 2019) (rejecting the defendant's assertion that the

problem resulted from a design defect at the pleading stage and determining the

nature of the defect should be determined at the summary judgment stage).

Dismissal of Plaintiffs' express warranty claims on this basis at this juncture is

unwarranted.

### 5.  Implied Warranty Claims

Defendant also argues Plaintiffs' implied warranty claims fail because Plaintiffs do not allege the Class Vehicles were unfit for their ordinary and intended purpose.  The Court agrees.  This Court has previously found a vehicle's ordinary, intended purpose is providing transportation; thus a plaintiff cannot maintain an implied warranty claim when he or she does not allege that the defect prevented an ability to drive the vehicle.  *See Weidman v. Ford Motor Co.*, No. 19-cv-12719, 2020 U.S. Dist. LEXIS 23547, at *14 (E.D. Mich. Feb. 11, 2020); *see also Beck v. FCA US, LLC*, 273 F. Supp. 3d 735, 762 (E.D. Mich. 2017) (dismissing implied warranty claims because "there is no indication in the complaint that, despite the safety concerns, [plaintiff] has actually stopped driving the vehicle."); *see also Sheris v. Nissan N Am., Inc.*, No. 07-cv-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. Jun. 2, 2008) (dismissing implied warranty claim for allegedly defective brake pads because the vehicle was fit for its "ordinary purpose of providing transportation for its owner"); *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1297 (Cal. Ct. App. 1995) (rejecting argument that test for implied warranty is "whether [vehicle] is free of all speculative risks, safety-related or otherwise").

In the FACC, Plaintiffs do not allege that the Oil Consumption Defect has rendered the Class Vehicles inoperable or otherwise incapable of providing transportation.  Plaintiffs do not allege that they have experienced engine failure,

they have had difficulty turning on their vehicles, keeping the engine running or

operating their vehicles. *Weidman*, 2020 U.S. Dist. LEXIS 23547, at *14

(dismissing implied warranty claims where no plaintiff alleged that were unable to

use their vehicles).

Plaintiffs' implied warranty claims are subject to dismissal for failure to

state a claim.

### 6. Economic Loss Doctrine

Ford also argues the economic loss doctrine bars certain Plaintiffs' claims

under their respective states' laws. The economic loss doctrine, adopted in some

jurisdictions, bars tort recovery for claims arising from the impairment of a

contractual benefit. *See Francis*, 504 F. Supp. 3d at 686. Ford further asserts

Plaintiffs claims are not independent of any alleged breach of contract where the

FACC is devoid of affirmative misrepresentation allegations. Ford complains the

FACC's purported misrepresentations are expressed in conclusory terms without

any identification of the actual statement or are based on generalized marketing

statements such as "Built Ford Tough."

Ford ignores that each of the states at issue in this litigation have adopted

some variation of the fraud exception to the economic loss doctrine. *See Francis*,

504 F. Supp. 3d at 686-87; *Anderson v. Apple, Inc*., 500 F. Supp. 3d 993, 1021

(N.D. Cal. 2020); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No.

17-13544, 2018 WL 4144683, at *14 (D.N.J. Aug. 29, 2018) (citing *Coastal Group v. Dryvit Sys*., 274 N.J. Super. 171, 177 (App. Div. 1994) (noting the economic loss doctrine under New Jersey law "only precludes claims brought under tort principles which are inconsistent with the remedies authorized under the UCC" and that "the UCC expressly preserves a buyer's right to maintain an action for fraud and misrepresentation");*In re Gen. Motors LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 435-36 (S.D.N.Y. 2017); *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 427-29 (E.D. Pa. 2015); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc*., 110 So.3d 399, 406-07 (Fla. 2013) (recognizing the "over-expansion of the economic loss rule," and finding it does not apply to claims based on fraudulent inducement or negligent misrepresentation);*Robinson Helicopter Co., Inc. v. Dana Corp*., 34 Cal. 4th 979, 993 (Cal. 2004);; ;.

In the FACC, Plaintiffs allege Ford knowingly hid information about the Oil Consumption Defect and its implicit safety issues, actively concealed the defect by altering its Owner's Manual, revising the care instructions in its TSBs, and by replacing the oil dipstick.  ECF No. 19, PageID.419.  Plaintiffs maintain that Ford made inadequate disclosures regarding expected oil consumption in the owner's manual and provided misleading statements about the durability and high performance of the Class Vehicles. Because the states at issue have "cabined [the economic loss doctrine] to bar only actions sounding in negligence and other

unintentional torts, not intentional fraud[,]" and some have even crafted exceptions to the doctrine "where a defendant deliberately conceals information to induce the plaintiff to conclude a bargain, or to obfuscate product safety concerns[,]" Plaintiffs' fraudulent and negligent misrepresentation claims are not barred by the economic loss doctrine. *Francis*, 504 F. Supp. 3d at 687.

Finally, Ford's argument that the economic loss doctrine bars Plaintiffs' California unfair competition claims is without merit. *See Kacsuta v. Lenovo (United States) Inc*., No. SACV1300316, 2013 WL 12126775, at *5 (C.D. Cal. Jul. 16, 2013) (gathering cases holding the economic loss doctrine does not bar unfair competition claims). The cases relied on by Ford do not involve allegations of fraud or deceit and have been rejected by subsequent courts. *See, e.g., Diamos v. Walmart Inc.*, No. 219CV05526, 2020 WL 1942322, at *3 (C.D. Cal. Jan. 9, 2020) (directly rejecting Ford's cited authority, *Niagara Bottling, LLC v. Rite-Hite Co*., No. 18-cv-2032, 2019 U.S. Dist. LEXIS 70511 (C.D. Cal. Feb. 11, 2019) and *Casden Builders Inc. v. Entre Prises USA, Inc.*, No. 10-cv-35, 2020 U.S. Dist. LEXIS 82423 (C.D. Cal. Jul. 21, 2010) and holding statutory claims such as the UCL are not barred by the economic loss doctrine). The economic loss doctrine does not bar Plaintiffs' claims.

## 7. Fraudulent Intent

Ford next argues Plaintiffs' fraud and consumer protection act claims fail because Plaintiffs have not alleged Ford's fraudulent intent. Plaintiffs counter that Ohio and New Jersey laws do not require proof of fraudulent intent. To sufficiently plead a fraud claim under Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs must "(1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co*., 683 F.3d 239, 253 (6th Cir. 2012)

Here, Plaintiffs have pled substantial allegations of Ford's knowledge and intent to deceive in the FACC. Ford's knowledge of the Oil Consumption Defect and intent to deceive consumers may be inferred by its amendment to the 2018 Owner's Manual to suggest that how a user "drive[s] high performance vehicles" leads to "higher oil consumption." Plaintiffs maintain this change in wording was to conceal the defect from customers and shield Ford from repair claims during the warranty period. ECF No. 19, PageID.417-418. Plaintiffs further allege that Ford intentionally altered the F-150 engine oil monitors–the dipstick–"to mask the oil consumption problem in the Class Vehicles." *Id*. at PageID.399. Plaintiffs claim the redesigned dipstick does not properly read oil levels, but rather aids in concealing the excessive oil consumption in the 5.0L engine. Ford argues the changes it made in TSBs, SSMs and the Owner's Manual were merely done to

inform customers about a potential concern, however, this is a factual dispute not amenable to resolution at this stage of the proceedings.  These allegations are sufficient under Rule 9(b).

### 8.  Unjust Enrichment

Where a valid contract exists, a plaintiff's claim for unjust enrichment fails. *See, E.g.*, *Heritage Valley Health Sys. v. Nuance Commc'ncs, Inc*., 479 F. Supp. 3d 175, 188 (W.D. Pa. 2020); *In re GM LLC Ignition Switch Litig*., 339 F. Supp. 3d 262, 337-38, 341-42 (S.D.N.Y. 2018); *Deras v. Volkswagen Grp. Of Am., Inc*., No. 17-cv-05452, 2018 U.S. Dist. LEXIS 83553, at *9 (N.D. Cal. May 17, 2018); *Wilson v. Everbank, N.A*., 77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015); *Llewellyn-Jones v. Metro Prop. Grp*., 22 F. Supp. 3d 760, 794 (E.D. Mich. 2014); *Wiseberg v. Toyota Motor Corp*., No. 11-cv-3776, 2012 U.S. Dist. LEXIS 45849, at *32-33 (D.N.J. Mar. 30, 2012); *Duffy v. Ticketreserve, Inc*., 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010); *City of Elyria v. York Int'l Corp*., No. 03-cv-2079, 2005 U.S. Dist. LEXIS 10889, at * 10 (N.D. Ohio Jun. 7, 2005).

In the FACC, Plaintiffs allege the "Class Vehicles and their component parts are covered by Ford's express warranty."  ECF No. 19, PageID.467, 486, 494, 507, 521, 534, 548, 561, 575, 588, 596.  Plaintiffs' claims are premised on a valid contract between the parties, regardless of the defenses raised by Ford.  The law is

well settled that Plaintiffs may not maintain their unjust enrichment claim when they allege a binding contract. This claim is subject to dismissal.

### 9. Injunctive Relief

Finally, Ford argues Plaintiffs are not entitled to injunctive relief because the FACC is devoid of allegations that Plaintiffs intend to purchase any Class Vehicle in the future. The Court agrees. Injunctive and equitable relief are not available where there is an adequate remedy at law. *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 08-cv-186, 2009 U.S. Dist. LEXIS 27070, at *17 (S.D. Ohio Mar. 30, 2019); *see also In re Macbook Keyboard Litig.*, No. 18-cv-02813, 2020 U.S. Dist. LEXIS 190508, at *12-13 (N.D. Cal. Oct. 13, 2020).

Here, Plaintiffs do not allege a threat of future harm from a future vehicle purchase from Ford. *See In re Subaru Battery Drain Prods. Liab. Litig.,* No. 1:20-CV-03095-JHR-JS, 2021 U.S. Dist. LEXIS 62373, *91 (D.N.J. Mar. 31, 2021) (dismissing injunctive relief even where plaintiffs alleged that they were "reasonably likely to purchase another Subaru in the future" because the "Third Circuit [has] bluntly rejected 'stop me before I buy again' standing arguments such as Plaintiffs' argument here."); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 801(E.D. Mich. 2019) (dismissing claim for injunctive relief where "Plaintiffs' allegations that GM continues to install defective cooling systems in new Z06s fail to allege ongoing or future harm; Plaintiffs have already bought a Z06, are now

aware of the alleged defect, and do not allege they are likely to buy another Z06");

*Nguyen v. Nissan N. Am., Inc*., No. 16-CV-05591, 2017 U.S. Dist. LEXIS 55501,

*15 (N.D. Cal. Apr. 11, 2017) ("The FAC contains no allegations that plaintiff

intends to purchase a Class Vehicle in the future, or indeed any other product from

Nissan.  Accordingly, Plaintiffs' allegations fall short of establishing '[a] real and

immediate threat of injury' sufficient to establish Plaintiff's standing to seek an

injunction preventing Defendant from further misleading sales of the Class

Vehicles.");*see also Carroll v. Nw. Fed. Credit Union*, 770 F. App'x 102, 104 (4th

Cir. May 1, 2019); *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 460

(S.D.N.Y. 2020); *Whitaker v. Herr Foods, Inc*., 198 F. Supp. 3d 476, 496 (E.D. Pa.

2016); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1034 (S.D. Tex.

2016); *Herazo v. Whole Foods Market, Inc*., No. 14-61909, 2015 U.S. Dist. LEXIS

96811, at *8-10 (S.D. Fla. Jul. 24, 2015); *Johnson v. Jos. A. Bank Clothiers, Inc.*,

No. 2:13-cv-756, 2015 U.S. Dist. LEXIS 183381, at *14 (S.D. Ohio Jun. 9, 2015);

*Bohn v. Boiron, Inc*., No. 11 C 08704, 2013 U.S. Dist. LEXIS 107928, at * 4 (N.D.

Ill. Aug. 1, 2013); .  Based on this authority, Plaintiffs are not entitled to injunctive

relief.

### C.  Plaintiffs' Motion for Appointment of Interim Class Counsel

Finally, Plaintiffs move for the appointment of interim class counsel in order

to protect the interests of the putative class, avoid confusion and delay and to

ensure the efficient prosecution of this case.  Specifically, Plaintiffs request that the

Court appoint E. Powell Miller of The Miller Law Firm, P.C. ("Miller Law") and

Matthew D. Schelkopf of Sauder Schelkopf LLC ("Sauder Schelkopf") as Interim

Co-Lead Counsel for Plaintiffs and the putative class.  Plaintiffs further request

that this Court appoint Victoria S. Nugent of Cohen Milstein Sellers & Toll PLLC

("Cohen Milstein"), William Anderson of Handley Farah & Anderson PLLC

("HFA"), Jon Herskowitz of Baron & Herskowitz, and Steven G. Calamusca of

Gordon & Partners, P.A. as Interim Members of the Plaintiffs' Steering

Committee.  Plaintiffs sought concurrence in the relief sought in their present

motion, and Ford advised that—without waiving any objections—it did not intend

to take a position at this time with respect to the relief Plaintiffs seek.

"The court may designate interim counsel to act on behalf of the putative

class before determining whether to certify the action as a class action."  Fed. R.

Civ. P. 23(g)(3).  The Manual for Complex Litigation recommends that early in

complex litigation the court select and authorize one or more attorneys to act on

behalf of other counsel and their clients, and counsel "assume[s] a responsibility to

the court and an obligation to act fairly, efficiently, and economically in the

interests of all parties and parties' counsel."  Manual for Complex Litigation,

Fourth § 10.22, p. 24 (2004).  And "the lawyers may stipulate to the appointment

of a lead interim counsel and a steering committee to act for the proposed class.

Such a stipulation leaves the court with the tasks of determining that the chosen counsel is adequate to serve as interim class counsel and making a formal order of appointment." *Id*. at § 21.22, pp. 246-247.

"[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation § 21.11 (4th ed. 2004).

Although neither Rule 23(g) nor the Advisory Committee Notes explicitly define the standards for appointing interim class counsel, courts have held that the same standards apply as when selecting class counsel at the class certification stage. *See, e.g., Hill v. Tribune Co*., No. 05 C 2606, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("Rule 23(g) provides criteria to consider when appointing class counsel. No distinction is made regarding appointing interim counsel."). Therefore, the Court must consider the following factors in appointing interim class counsel:

> 1) the work that counsel has performed in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources that counsel will commit to representing the class.

*In re Delphi ERISA Litig.,* 230 F.R.D. 496, 498 (E.D. Mich. 2005) (citing Fed. R. Civ. P. 23(g)(1)(C)(I)).  The "Court may also consider other matter [sic] pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (citing Fed. R. Civ. P. 23(g)(1)(ii)); *see also* Fed. R. Civ. P. 23(g)(2) (Standard for Appointing Class Counsel) and (4) (Duty of Class Counsel).

Miller Law, Sauder Schelkopf, Cohen Milstein, HFA, Baron & Herskowitz, and Gordon & Partners, P.A. have all spent significant amounts of time and energy identifying and investigating potential claims in the action, as evidenced by the initial and amended complaints.  Miller Law, Sauder Schelkopf, Cohen Milstein, HFA, Baron & Herskowitz, and Gordon & Partners, P.A. all have ample experience handling class actions and complex litigation, including automobile defect cases.  Each firm is knowledgeable about the applicable federal and state laws and will appropriately dedicate their resources to representing the putative class.  Under these circumstances, the appointment of two firms to lead this litigation, and three firms as members of a Plaintiffs' Interim Steering Committee, is appropriate. This will ensure that sufficient resources will be available to handle the anticipated immense burdens of this litigation on behalf of the putative class.

Miller Law, Matthew Schelkopf and the attorneys at Sauder Schelkopf, Cohen Milstein and Victoria Nugent, Mr. Anderson and HFA, Jon M. Herskowitz and the Baron and Herskowitz Law Firm, and Steven G. Calamusa of Gordon &

Partners all have extensive experience in automotive supply-chain, product defect, and internal operation disputes against OEMs, both in the class action arena and in commercial litigation.  Upon review of the Plaintiffs' Motion and exhibits attached thereto, the Court finds appointment of E. Powell Miller of Miller Law and Matthew D. Schelkopf of Sauder Schelkopf as Interim Co-Lead Counsel for Plaintiffs and the putative class is appropriate at this time.  The Court further concludes the appointment of Victoria S. Nugent of Cohen Milstein, William Anderson of HFA, Jon Herskowitz of Baron & Herskowitz, and Steven G. Calamusca of Gordon & Partners, P.A. as Interim Members of the Plaintiffs' Steering Committee is likewise appropriate at this time.  Nine Plaintiffs from seven states alleging 16 claims have survived Rule 12(b)(6) at this juncture, and the Court provided the parties with scheduling dates at the March 16, 2022 hearing in this matter.  Moreover, counsel have conducted extensive research into the investigation and presentation of Plaintiffs' claims and the potential claims in this action; they have substantial experience in handling class actions and other complex litigation, in particular involving product defects from OEMs.  Finally, counsel has represented preparedness to expend the resources necessary to litigate Plaintiffs' claims against Defendant.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration of Certain Plaintiffs' Claims [#29] is **GRANTED**. The claims brought by Plaintiffs Dennis Gabel (Texas) [Counts 35 through 37], Gordon McCardy (Michigan)[Counts 19-21]; Jason Pierce (Florida) [Counts 13-15]; James Rittmanic and Judson Wessbecher (Illinois) [Counts 16-18] in the First Amended Class Action Complaint are **STAYED** pending resolution of the arbitrability issues raised herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint [#30] is **GRANTED IN PART and DENIED IN PART**.  Counts 2-6, 11, 15 (as to Plaintiffs Swindell and Wiley only), 24, 28, 31, 34, 39), and request for injunctive relief are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint [#16] is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion to Appoint Interim Class Counsel [#33] is **GRANTED**.  E. Powell Miller of Miller Law and Matthew D. Schelkopf of Sauder Schelkopf are appointed as Interim Co-Lead Counsel and Victoria S. Nugent of Cohen Milstein, William Anderson of HFA, Jon Herskowitz of Baron & Herskowitz, and Steven G. Calamusca of Gordon &

Partners, P.A. are appointed as Interim Members of the Plaintiffs' Steering Committee.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Appoint Interim Class Counsel [#24] is **MOOT**.

The parties may proceed with discovery on the following counts at this juncture:  1, 7-10, 12, 22-23, 25-27, 29-30, 32-33, and 38.   A scheduling order shall be issued forthwith.

Dated:  March 22, 2022                         /s/Gershwin A. Drain
                                                              GERSHWIN A. DRAIN
                                                              United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 22, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager