UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LYMAN, *et al.*,

               Plaintiffs,

                                    Case No.: 21-10024

v.                                Honorable Gershwin A. Drain

FORD MOTOR COMPANY,

               Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
COMPEL ARBITRATION OF CERTAIN PLAINTIFFS' CLAIMS [#76]
AND GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT [#77]**

## I.     INTRODUCTION

Presently before the Court is the Defendant Ford Motor Company's (Ford)

Motion to Compel Arbitration of Certain Plaintiffs' claims, filed on July 20, 2022.

Also, before the Court is Ford's Partial Motion to Dismiss Plaintiffs' Second

Amended Class Action Complaint (SACAC), likewise filed on July 20, 2022.

These matters are fully briefed.  Upon review of the parties' submissions, the Court

concludes that oral argument will not aid in the resolution of these matters.

Accordingly, the Court will determine Ford's Motions on the briefs.  *See* E.D.

Mich. L.R.7.1(f)(2).  For the reasons that follow, the Court grants Ford's Motion to

Compel Arbitration of Certain Plaintiffs' claims and grants Ford's Partial Motion
for Dismissal.

## II.     FACTUAL BACKGROUND

Plaintiffs and members of the classes they propose to represent purchased or
leased Ford F-150 pickup trucks, beginning with Model Year 2018, when Ford
debuted its new and enhanced F-150 line equipped with a 5.0L engine.  Plaintiffs
allege the 5.0L engine's piston ring assembly and cylinder coating are defective in
the Class Vehicles and engine oil is consumed at an excessive rate ("Oil
Consumption Defect").  Plaintiffs claim the engine is not capable of maintaining
the proper level of engine oil based on the care and maintenance instructions set
forth in the Owner's Manual.  Plaintiffs claim the Oil Consumption Defect is a
serious issue for vehicle longevity and safety.  It can cause premature wear on an
engine, lead to stalling and even engine failure—increasing the risk of accident and
injury.

## III.    PROCEDURAL POSTURE

On January 6, 2021, Plaintiffs filed an initial complaint on behalf of
Plaintiffs David Lyman, Timothy Thuering, and Vincent Brady.  *See* ECF No. 1.
After Ford filed a motion to dismiss, Plaintiffs filed a First Amended Class Action
Complaint (FACAC) on May 3, 2021, which asserted claims on behalf of the same
three plaintiffs, as well as new claims on behalf of Plaintiffs Marc Baus, Dennis

Gabel, Gordon McCardy, Jason Pierce, James Rittmanic, Michelle and Richard

Shawley, Thermon Stacy, Ronnie Swindell, Judson Wessbecher, and John Wiley.

*See* ECF No. 19.

On July 1, 2021, Ford moved to dismiss the FACAC.  After full briefing and

a hearing, the Court's March 22, 2022 Opinion and Order dismissed Plaintiffs'

implied warranty, nationwide common law, unjust enrichment and injunctive relief

claims in the FACAC.

On July 1, 2021, Ford also moved to compel the claims of five plaintiffs to

arbitration:  Dennis Gabel, Gordon McCardy, Jason Pierce, James Rittmanic, and

Judson Wessbecher.  *See* ECF Nos. 29, 30.  Ford's motion was based on the

arbitration agreement contained in the Motor Vehicle Retail Installment Sales

Contracts ("RISCs") that each Plaintiff had signed when he financed his vehicle

through Ford Motor Credit Company.  *See* ECF No. 29.

After full briefing and a hearing, the Court issued its Opinion and Order

compelling the claims of Plaintiffs Gabel, McCardy, Pierce, Rittmanic, and

Wessbecher to arbitration, in accordance with the delegation clause in their RISC

contracts.  *See* ECF No. 63.  At the Court's direction, the remaining parties

proceeded to discovery on the remaining claims in Plaintiffs' FACAC.  *Id.*

When the remaining Plaintiffs made their initial production of documents in

response to Ford's requests for production, Ford discovered that Plaintiffs Wiley,

Swindell, Baus, and Thuering had also entered into arbitration agreements.  Wiley

and Swindell each executed a Buyer's Order, Agreement & Vehicle Information

Form with an independent, authorized Ford dealership; Baus executed a Motor

Vehicle Retail Order with a Ford dealership; and Thuering executed a Promissory

Note and Security Agreement with Citizens Bank.

### **Wiley & Swindell**

ARBITRATION PROVISION

PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS

1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2.    IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3.    DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . .  Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis

4

and not as a class action.  You expressly waive any right you may
have to arbitrate a class action. . . .

Any arbitration under this Arbitration Provision shall be
governed by the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*) and not
by any state law concerning arbitration. . . . This Arbitration Provision
shall survive any termination, payoff or transfer of this contract. . . .

## Baus

AGREEMENT TO ARBITRATE ALL CLAIMS.  READ THE
FOLLOWING ARBITRATION PROVISION CAREFULLY, IT
LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO
MAINTAIN A COURT ACTION, OR TO PURSUE A CLASS
ACTION IN COURT AND IN ARBITRATION.

The parties to this agreement agree to arbitrate all claims, disputes, or
controversies, including all statutory claims and any state or federal
claims ("claims"), that may arise out of or relating to this agreement
and the sale or lease identified in this agreement.  By agreeing to
arbitrate, the parties understand and agree that they are giving up their
rights to use other available resolution processes, such as a court
action or administrative proceeding, to resolve their disputes.  Further,
the parties understand that they may not pursue any claim, even in
arbitration, on behalf of a class or to consolidate their claim with those
of other persons or entities.  Consumer Fraud, Used Car Lemon Law,
and Truth-in-Lending claims are just three examples of the various
types of statutory claims subject to arbitration under this agreement.
The arbitration shall be administered by the American Arbitration
Association under its Commercial Arbitration Rules, and the
Consumer Related Disputes Supplementary Procedures. . .
THIS ARBITRATION PROVISION IS GOVERNED BY THE
FEDERAL ARBITRATION ACT. . .

## Thuering

Binding Arbitration.  If you have a dispute with us, and we are not
able to, resolve the dispute informally, you and we agree that upon
demand by either you or us, the dispute will be resolved through the
arbitration process as set forth in this part. A "claim" or "dispute," as
used in this Arbitration Agreement, is any unresolved disagreement

between you and us, arising from or relating in any way to this
Promissory Note And Security Agreement (the "Note"), extensions,
addendums or modifications or the borrower-lender relationship
between us.  It includes any disagreement relating in any way to the
Note (including any renewals, extensions, or modifications thereof),
the servicing of the Note, the purchase of the Vehicle described in the
Note, the operation of the Vehicle described in the Note, including,
but not limited to, any alleged defects of the Vehicle. . .
Each arbitration, including the selection of the arbitrator(s), shall be
administered by the American Arbitration Association (AAA) or
JAMS according to such forum's rules and procedures
. . . this arbitration agreement and any resulting arbitration are
governed by the provisions of the FAA[.]

## IV.   LAW & ANALYSIS

### A.  Motion to Compel

#### 1.  Standard of Review

The Federal Arbitration Act ("FAA") preempts state law and requires the

enforcement of arbitration agreements by expressly providing that agreements to

arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA

applies to any written arbitration agreement contained in a contract "evidencing a

transaction involving commerce."  *Id.*  The Supreme Court has explained that the

FAA "reflect[s] both a liberal federal policy favoring arbitration and the

fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC*

*v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks

omitted).  The federal "policy favoring arbitration" requires that "a court must hold

a party to its arbitration contract just as the court would to any other kind."

*Morgan v. Sundance, Inc*., 142 S. Ct. 1708, 1713 (2022).

      Ordinarily, before compelling an unwilling party to arbitrate, the court must "engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc*., 315 F.3d 619, 624 (6th Cir. 2003).  In doing so, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983)). However, where the parties have clearly and unmistakably agreed to have an arbitrator decide gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy, the court is precluded "from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'" *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021); *see also* Opinion and Order, ECF No. 63, PageID.3686 (explaining that binding Sixth Circuit precedent, including *Swiger*, required that Plaintiffs' challenges to Ford's standing to enforce arbitration as a non-signatory must be submitted to the arbitrator).

## 2. Analysis

Here, the Court has already decided under binding Sixth Circuit precedent that, where an arbitration agreement contains a clear delegation clause, the arbitrator must determine issues of arbitrability—including any challenge to Ford's ability to enforce the arbitration agreement as a non-signatory. *Id.*, PageID.3684-3687. This ruling is now the law of the case. *See Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (highlighting that law-of-the-case doctrine "provides that the courts should not reconsider a matter once resolved in a continuing proceeding").

In its Order, the Court rejected Plaintiffs' attempts to circumvent binding Sixth Circuit precedent on this issue:

> [T]he Sixth Circuit in *Swiger* held, "a nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability[.]" *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021). Plaintiffs argue this case is distinguishable from *Swiger* and *Blanton [v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 844 (6th Cir. 2020] because they are challenging the delegation clauses specifically, unlike the *Swiger* and *Blanton* plaintiffs, who either conceded the issue or "challenged the enforceability of the whole arbitration agreement and nowhere mentioned the delegation clause." *Swiger*, 989 F.3d at 507.
>
> Yet, Plaintiffs' challenges do not go to the validity of the delegation clauses. Rather, they are simply challenging Ford's standing to enforce arbitration as a non-signatory to the RISCs; however, *Blanton*, *Swiger*, and *Chaudhri* require that this very issue be submitted to the arbitrator because it is an arbitrability issue. *Swiger*, 989 F.3d at 507; *Blanton*, 962 F.3d at 848. "[S]pecifically challeng[ing] the delegation provision . . . is not a mere pleading requirement." *Chaudhri*, 19 F.4th

> at 885-86 (explaining that district courts "must look to the substance
> of the challenge[,]" and where the basis of the challenge "affects the
> validity or enforceability of the whole contract, as well as the
> agreement to arbitrate and its delegation provision[,]" the challenge is
> for the arbitrator to decide).

Opinion and Order, ECF No. 63, PageID.3685-3686.  Because Plaintiffs' basis for

challenging the delegation provision went "to the enforceability of the whole

arbitration agreement," this Court held that such a challenge "is an arbitrability

issue that must go to the arbitrator to decide."  *Id.* at PageID.3686.

Since the Court's ruling, both the Sixth Circuit and another court in this

District have reinforced its soundness.  The Sixth Circuit reaffirmed *Swiger* and

rejected the same arguments that the first five plaintiffs compelled to arbitration

raised—and this Court rejected—in response to Ford's first motion to compel

arbitration.  *See Becker v. Delek US Energy, Inc.*, __ F.4th __, No. 20-6255/6258,

2022 U.S. App. LEXIS 18524, at *7-10 (6th Cir. July 6, 2022).  Another court in

this District followed this Court's Order and compelled plaintiffs to arbitrate

arbitrability with Ford, based on materially identical purchase agreements.

*Cunningham v. Ford Motor Co*., No. 21-cv-10791 at 20 (E.D. Mich. July 19,

2022); *Id*. at 10, 14 (citing *Lyman v. Ford Motor Co*., No. 21-cv-10024, 2022 U.S.

Dist. LEXIS 51676 (E.D. Mich. Mar. 22, 2022)).

As with the earlier plaintiffs' contracts with Ford Credit, the four recently

produced Plaintiffs' contracts contain: (1) explicit language delegating arbitrability

(Wiley, Swindell, Thuering); or (2) express language incorporating arbitral rules that delegate arbitrability (Baus, Thuering).  Therefore, consistent with this Court's prior Opinion and Order, the arbitrator—not the Court—must decide whether Ford, as a non-signatory, can enforce the four newly-discovered agreements' arbitration provisions.

Plaintiffs Wiley and Swindell's claims are subject to valid and binding arbitration clauses that contain explicit delegation language materially identical to the RISC1 arbitration provision already considered by this Court.  See Opinion and Order, ECF No. 63, PageID.3685.  Plaintiffs Wiley and Swindell's Agreements provide that "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) . . . shall . . . be resolved by neutral, binding arbitration and not by a court action."  Thus, as this Court found before, Plaintiffs Wiley and Swindell are required to arbitrate their claims, and the arbitrator can determine any issues of arbitrability.  Opinion and Order, ECF No. 63, PageID.3709.

Similarly, Plaintiff Thuering's arbitration clause states that disputes covered by the arbitration clause "include disagreements about the meaning, application or enforceability of this arbitration agreement."  Like Wiley and Swindell, Thuering must present his arbitrability challenges and his claims to the arbitrator.

Plaintiffs Baus's and Thuering's Agreements require the same result for another reason. As this Court recognized, under Sixth Circuit precedent, "incorporation of the AAA's rules provides clear and unmistakable evidence the parties agreed to arbitrate arbitrability. *Id*. at PageID.3685 (citing *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020)). Plaintiff Baus's Agreement states "[t]he arbitration shall be administered by the American Arbitration Association under its Commercial Arbitration Rules[.]" Plaintiff Thuering's Agreement provides that the arbitration "shall be administered by the American Arbitration Association (AAA) or JAMS6 according to such forum's rules and procedures." For this additional reason, Plaintiffs Baus and Thuering must arbitrate their claims, and the arbitrator can determine any issues of arbitrability. *Id.* at PageID.3709).

Plaintiffs try to distance themselves from the *Swiger* and *Blanton* plaintiffs and the Plaintiffs subject to this Court's prior arbitration ruling by arguing they "specifically challenge the notion that [they] intended to agree, and agreed, to delegate issues of arbitrability with Ford to an arbitrator." ECF No. 82, PageID.4366-68. This challenge, worded differently, is essentially the same challenge raised by Plaintiffs Gabel, McCardy, Pierce, Rittmanic, and Wessbecher in the prior arbitration motion decided by this Court. Plaintiffs are not challenging the validity of the delegation clauses; they are challenging Ford's right to enforce

11

the arbitration agreement as a whole. That is precisely the same "non-signatory" argument that the Sixth Circuit rejected in *Swiger, Blanton*, and most recently, *Becker v. Delek US Energy, Inc*., 39 F.4th 351, 356 (6th Cir. 2022), and that this Court rejected in its prior Opinion and Order.

Plaintiffs also challenge the delegation clauses by saying they are "completely subsumed within the arbitration provisions." ECF No. 82, PageID.4359. Plaintiffs cite no authority from the Sixth Circuit or any other Circuit requiring a delegation clause to stand alone in order to "clearly and unmistakably" evidence an intent to delegate questions of arbitrability. *Cunningham*, 2022 WL 2819115, at *14. There is no such requirement in the Sixth Circuit. *See Swiger*, 989 F.3d at 506 (clauses did not stand alone but "clearly and unmistakably" evidenced intent to delegate questions of arbitrability).

Plaintiffs also argue that Ford waived its right to compel them to arbitration because Ford "actively engaged" in the litigation before filing its motion to compel.  However, Plaintiffs' waiver argument is a threshold issue to be decided by the arbitrator. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (When an arbitration agreement contains a broad delegation clause, it includes "allegations[s] of waiver."). Waiver goes to whether Ford can enforce the arbitration agreements. And this Court has already found that issues regarding "the

enforceability of the whole arbitration agreement" are issues of arbitrability that "must go to the arbitrator[.]" Opinion and Order, ECF No. 63, PageID.3686.

Even if the waiver issue is appropriate for the Court to consider, Ford has not waived its right to compel arbitration.  Plaintiffs admit that Ford only recently received Plaintiffs' purchase agreements through discovery.  Ford filed its Motion to Compel Arbitration less than one month after learning about Plaintiffs' agreements.  Under these circumstances, Ford cannot be said to have "unnecessarily delayed or 'too long postponed its invocation of its contractual right to arbitration.'" *Bossart v. Gen. Motors LLC*, No. 20-cv-11057, ECF No. 64, PageID.2340 n.1 (E.D. Mich. Aug. 19, 2022) (alterations removed, quoting *United States ex. Rel. Dorsa v. Miraca Life Scis. Inc.*, 33 F.4 352, 358 (6th Cir. 2022)). Courts in this Circuit decline to find arbitration waivers, especially where, as here, there is no evidence that Ford knew about the agreements and "sat" on its rights. *Stratton v. Portfolio Recovery Assocs., LLC*, 2015 WL 6675551, at *5 (E.D. Ky. Nov. 2, 2015); *see also Henry v. Smyth Auto., Inc.*, 2020 WL 7767626, at *4 (S.D. Ohio Dec. 30, 2020) (finding no waiver where no evidence defendant possessed the arbitration agreement).

Consistent with this Court's earlier holding, because Plaintiffs Wiley, Swindell, Baus, and Thuering signed arbitration agreements that clearly and

unmistakably delegate issues of arbitrability to an arbitrator to decide in the first instance, they must also be compelled to arbitrate their claims.

### B. **Motion to Dismiss**

#### 1. **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Id.*

(citations and quotations omitted). "[T]he tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A]

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is

entitled to relief.'" *Id*. at 1950.

## 2.   Counts 2-4, 6, 9, 12, 15, 18, 21 and 23

Ford argues this Court's Opinion and Order on Ford's Motion to Dismiss the

FACAC requires dismissal of nearly half the claims in the SACAC.  Plaintiff does

not oppose dismissal of these claims and included them in the SACAC only to

preserve them for any eventual appeal.

Here, this Court previously dismissed Plaintiffs' implied warranty, unjust

enrichment, and nationwide common law claims, as well as Plaintiffs' request for

injunctive relief, with prejudice.  *See* Opinion and Order, ECF No. 63,

PageID.3704.  Plaintiffs reassert these claims in the SACAC, but expressly

concede that they do not seek to relitigate them.  *See* SACAC, ECF No. 73, PageID.3844.  Thus, these claims are subject to dismissal for the same reasons as those set forth in this Court's Opinion and Order dismissing these claims in the First Amended Class Action Complaint.  That includes the Pennsylvania law claims of new Plaintiffs Dana and John Herold, whose claims are substantively identical to the previously dismissed Pennsylvania law claims of Plaintiffs Michele and Richard Shawley.   In their response, Plaintiffs indicate they will stipulate that the implied warranty and unjust enrichment claims brought by the new Pennsylvania Plaintiffs in the SACAC are indistinguishable from the claims already dismissed by the Court.

While Plaintiff Flynn's implied warranty claim and unjust enrichment claims under Virginia law were not yet at issue in the March 22, 2022 Opinion and Order, the Plaintiffs concede that his claims are substantially indistinguishable from the implied warranty and unjust enrichment claims already dismissed by this Court. As such, Plaintiffs' response indicates they will also stipulate that the Court's prior order is binding on the Virginia implied warranty and unjust enrichment claims alleged in the SACAC.

Accordingly, for these reasons, Counts 2-4, 6, 9, 12, 15, 18, 21 and 23 are dismissed.

### 3. Plaintiff Flynn's Negligent Misrepresentation Claim (Count 5)

Ford also asserts that Plaintiff Flynn's negligent misrepresentation claim is barred by the economic loss rule under Virginia law.  Plaintiffs counter that the economic loss doctrine does not bar Plaintiff Flynn's negligent misrepresentation claim because his claim is based on an independent duty to provide honest and accurate information or other statutory duties under the Virginia Consumer Protection Act.

In this Court's March 22, 2022 Opinion and Order, the Court concluded that the Plaintiffs could assert tort claims because the various states at issue had adopted a fraud exception to the economic loss doctrine.  *See* Opinion and Order, ECF 63, PageID.3698-3700.  However, Virginia's Supreme Court has held the fraud exception to the economic loss doctrine is inapplicable to constructive fraud claims.  *See Filak v. George*, 267 Va. 612, 618; 594 S.E.2d 610 (Va. 2004) (concluding the economic loss rule bars constructive fraud claims).

In Virginia, a negligent misrepresentation claim is a "constructive fraud" claim.  *See Baker v. Elam*, 883 F. Supp.2d 576, 581 (E.D. Va. 2012) ("[T]he essence of constructive fraud is negligent misrepresentation."); *see also A.T. Massey Coal Co. v. Rudimex GmbH*, No. 3:05CV190-JRS, 2006 U.S. Dist. LEXIS 1882, *15-16 (E.D. Va. Jan. 9, 2006) (dismissing the plaintiff's negligent misrepresentation claim because "it is well-established that Virginia does not

17

recognize any tort of negligent misrepresentation."); *Barrigan v. Elite Funding*, No. 07-0951, 2009 U.S. Dist. LEXIS 1105, *9 (E.D. Va. Jan. 6, 2009) ("Plaintiff's negligent misrepresentation claims is properly reviewed as a constructive fraud claim.").

Plaintiffs primarily rely on two California district court cases in support of their argument: *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059 (E.D. Cal. 2006), and *Stockinger v. Toyota Motor Sales USA, Inc.*, 2017 WL 10574372 (C.D. Cal. July 7, 2017). These non-binding cases fail to cite relevant Virginia case law, including *Filak*.

The only Virginia case Plaintiffs cite—*Gonella v. Lumbermens Mut. Cas. Co.*, 64 Va. Cir. 229 (Va. Cir. Ct. 2004), is not helpful to Plaintiff Flynn's position. In *Gonella*, the court found that the economic loss rule did not bar negligence claims for property damage and personal injury from negligent mold remediation work. *Id.* at 229. The alleged property damage and personal injuries were non-economic injuries and thus not barred by the ELR. *Id.* at 232-36. A constructive fraud claim for purely economic losses was not at issue in that case. Unlike the *Gonella* plaintiff, Plaintiff Flynn has not alleged any non-economic injuries that would bring his negligent misrepresentation claim outside Virginia's economic loss rule.

Finally, Plaintiff Flynn's negligent misrepresentation claim cannot be saved by arguing he has alleged an "independent duty" to "provide honest and accurate information" or other statutory duties separate and apart from his contract.  The duty to be truthful is not a cognizable basis for a constructive fraud claim under Virginia law.  *See Filak*, 594 S.E.2d at 613; *4D-Enterprises, LLC v. Aalto Hyperbaric Oxygen, Inc.*, No. 1:19-cv-1504, 2020 U.S. Dist. LEXIS 263082, * (E.D. Va. May 22, 2020) (relying on *Filak* to conclude "the duty to be truthful . . . is not a cognizable basis to sustain a constructive fraud claim.").  Moreover, Plaintiffs fail to cite any authority for the proposition that the Virginia Consumer Protection Act creates an independent duty that circumvents Virginia's economic loss rule barring constructive fraud claims.  For all of these reasons, Plaintiff Flynn's negligent misrepresentation claim is dismissed.

## V. CONCLUSION

Accordingly, for the reasons articulated above, Ford's Motion to Compel Arbitration of Certain Plaintiffs' claims [#76] is GRANTED.  The claims brought by Plaintiffs Wiley, Swindell, Baus, and Thuering in the SACAC are STAYED pending resolution of the arbitrability issues raised herein.

Ford's Partial Motion to Dismiss Plaintiff's Second Amended Class Action Complaint [#77] is GRANTED.   Counts 2-6, 9, 12, 15, 18, 21 and 23 are DISMISSED.

SO ORDERED.

Dated:  March 28, 2023                          /s/Gershwin A. Drain
                                                GERSHWIN A. DRAIN
                                                United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record by electronic and/or
ordinary mail.

/s/ Teresa McGovern
Case Manager