UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID LYMAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Case No. 21-10024 <br> Honorable Gershwin A. Drain <br> Magistrate Judge Elizabeth A. Stafford |

**AMENDED REPORT AND RECOMMENDATION TO HOLD DEFENDANT FORD MOTOR COMPANY'S MOTION TO COMPEL ARBITRATION IN ABEYANCE (ECF NO. 101)**

### I.  Introduction and Background

Defendant Ford Motor Company moved to compel arbitration of Plaintiff Thermon Stacy's claims, arguing that Stacy signed a binding arbitration clause. ECF No. 101, PageID.4560. The Honorable Gershwin A. Drain referred all pretrial matters to the undersigned for hearing and determination under 28 U.S.C. § 636(b)(1). ECF No. 148.

On September 16, 2020, Stacy bought his Ford F-150 at YES Ford in West Virginia. ECF No. 162, PageID.8144. Ford says that Stacy electronically signed a retail installment sales contract (RISC) that

contained an arbitration provision. ECF No. 101; ECF No. 101-1, PageID.4661-4665. And Ford argues that the provision, identical to one that Judge Drain found to be valid in a March 2022 order, compels Stacy's claims to arbitration. ECF No. 101; *see* ECF No. 63. But Stacy contends that he signed no documents electronically and that Ford has not authenticated his signature on the document it relies on. ECF No. 104; ECF No. 104-2.

After a hearing on October 3, 3023, the Court finds that the "making of the arbitration agreement…[is] in issue." 9 U.S.C. § 4. Thus, the Court **RECOMMENDS** that Ford's motion to compel be **HELD IN ABEYANCE** while the parties "proceed summarily to the trial" about whether an agreement was formed. *Id.*

## II.     Analysis

### A.

The district court must resolve any challenges to the formation or existence of a contract containing a delegation clause before compelling arbitration in accordance with the provision. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 879 (6th Cir. 2021). If a valid agreement exists, then courts decide whether the arbitration provision that delegates the issue of arbitrability to the arbitrator is valid. *Id.* at 880. If the

2

delegation provision is valid, then "a court may not decide the arbitrability issue." *Id.* (cleaned up).

The analysis proceeds in two steps:

> *First*, we resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision. If a contract exists, we proceed to step two. *Second*, we decide any remaining *enforceability* or *validity* challenge only if it would affect the delegation provision alone or the basis of the challenge is directed specifically to the delegation provision.

*Id.* (cleaned up) (emphasis in original).

## B.

Under the Federal Arbitration Act (FAA), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

Under Section 4 of the FAA, "if the making of the arbitration agreement…[is] in issue, the court shall proceed summarily to the trial thereof." § 4. To decide whether the existence of an agreement is "in

3

issue," courts apply the summary judgment standard under Federal Rule of Civil Procedure 56. *See In re StockX*, 19 F.4th at 881. Ford, as the moving party, "must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Id.* (cleaned up); *see also* Rule 56. If Ford satisfies this burden, then the burden shifts to Stacy to set forth specific facts showing a genuine issue of material fact that could "lead a rational trier of fact to find" that a contract does not exist. *In re StockX*, 19 F.4th at 881 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 380. And the parties agree that West Virginia law governs the question of contract formation.

Under West Virginia law, a valid arbitration agreement must have "(1) competent parties; (2) legal subject matter; (3) valuable consideration; and (4) mutual assent." *State ex rel. AMFM, LLC v. King*, 230 W. Va. 471, 478 (2013). Mutual assent requires that "the parties have the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.,* 222 W. Va. 410, 418 (2008). A party seeking to enforce an agreement must produce prima facie evidence of the arbitration agreement. *State ex rel. Troy Grp., Inc. v. Sims,* 244 W. Va. 203, 209 (2020). And the burden of showing prima facie evidence is "a

light one": a party meets it by "providing copies of a written and signed agreement to arbitrate." *Id.* (cleaned up).

Under the Uniform Electronic Transactions Act, W. Va. Code § 39A-1-1 *et seq.*, a "contract may not be denied legal effect or enforceability solely because an electronic [signature] was used in its formation." § 39A-1-7(b). And an electronic signature "is attributable to a person if it was the act of the person," which "may be shown in any manner." § 39A-1-9(a).

Ford argues that it has met its initial burden by attaching to its motion to compel the written RISC with the arbitration agreement and Stacy's electronic signature. *See* ECF No. 101-1, PageID.4665; ECF No. 106. In this document titled "Retail Installment Sales Contract – Simple Finance Charge (with Arbitration Provision)," Stacy's typed name appears in two relevant places—in the "Agreement to Arbitrate" box on the first page and under the full arbitration provision on the last page. ECF No. 101-1, PageID.4661-4665. The document is dated September 16, 2020, and the timestamp at the bottom states that it was created at 3:41 GMT (11:41 EST). *Id.*

Ford also produced a sworn declaration from Riley Romeo, the general manager at YES Ford, stating that the "only way a buyer can enter a [RISC] with YES Ford is by electronically reviewing and signing a [RISC]."

5

ECF No. 106-1, PageID.4890.  Romeo said that before the RISC is presented to the buyer, the buyer must first "confirm how they would like their electronic signature to appear," check a box stating that they reviewed the ESIGN Consent, and "consent to receive and sign documents relating to their transaction electronically." *Id.*, PageID.4889-4890.  The buyer then receives the RISC to review and electronically sign.  *Id.*, PageID.4890.  Romeo said that this procedure was in place when Stacy purchased the vehicle on September 16.  *Id.*, PageID.4889.

But Stacy argues that Ford does not meet its initial burden.  Stacy asserts that Ford must show "evidence of the efficacy of any security procedure applied to verify the identity of the signatory."  ECF No. 104, PageID.4822-4823 (citing W. Va. Code, § 39A-1-9).  He also claims that Ford "failed to provide *any* extrinsic evidence" showing that the signature is attributable to him or that he received the terms of the agreement.  *Id.*, PageID.4824-4825 (emphasis in original).  At the hearing, Stacy's counsel argued that the Sixth Circuit in *Boykin* considered electronic evidence and metadata in deciding whether the plaintiff accepted the arbitration agreement.  *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 836-37 (6th Cir. 2021); ECF No. 166, PageID.8491.  And he asserted that

6

metadata, an audit trail, or a pace log could prove a signature's attribution. ECF No. 166, PageID.8491.

But Stacy provides no caselaw showing that a moving party must produce electronic evidence like metadata to meet its initial burden. And under West Virginia law, a moving party need only "provid[e] copies of a written and signed agreement to arbitrate" to show evidence of an agreement. *See Troy Group*, 244 W. Va. at 209 (finding that movants met prima facie burden of proving existence of agreement by producing an electronically signed arbitration agreement, despite nonmovant's claim that she did not sign it); *Ford Motor Credit Co., LLC v. Miller*, 248 W. Va. 231, 261 (2023) (finding that, on appeal, that Ford "clearly met its light burden to establish the existence of an arbitration agreement" by attaching the signed RISC agreement with the arbitration provision to its motion to compel). Thus, Ford has met its burden by producing the written arbitration agreement with Stacy's electronic signature.

The burden now shifts to Stacy to show a genuine issue of material fact. In an October 2022 deposition, Stacy testified that he purchased and financed his Ford F-150 through a YES Ford dealership but did not remember if he had any documents relating to the financing. ECF No. 101-1, PageID.4643-4644. And to his knowledge, the financing agreement did

7

not have an arbitration clause. *Id*. Later, Stacy stated in a sworn declaration that he "never signed any documents digitally," saw the RISC containing the arbitration provision with his purported electronic signature, or "use[d] any digital interface to consent to any agreement" for the purchase of his Ford F-150. ECF No. 104-2, PageID.4836-4837. He said that he was presented documents in the afternoon and signed only paper documents, which included no arbitration agreements. *Id.*, PageID.4836. And Stacy said that Ford never showed or gave him "any hard copies of any documents digitally signed in connection with the transaction." *Id.* Stacy also argues in his response that the RISC's electronic timestamp does not align with the initial presentation and signing of documents in the afternoon. *Compare* ECF No. 101-1, PageID.4661-4665, *with* ECF No. 104-2, PageID.4836.

Stacy asserts that his "unequivocal denial" that he saw the RISC and electronically consented to it creates a question of fact, citing *Boykin* in support. In *Boykin*, a defendant seeking to compel arbitration provided testimony that employees had to take an arbitration training session and agree to an arbitration agreement. 3 F.4th at 836. The defendant produced electronic records showing that the plaintiff completed the session. *Id.* But the plaintiff stated in an affidavit, "I unequivocally did not

consent to, sign, acknowledge or authorize any type of arbitration agreement with [defendant]…at any time." *Id.* at 840.  The Sixth Circuit found that this "flat[ ] denial" created a factual dispute about whether the plaintiff authorized the arbitration contract.  *Id.*

Ford counters that Stacy's declaration was not "unequivocal" and that it cannot dispute the arbitration agreement's validity.  ECF No. 106, PageID.4883.  But like the plaintiff in *Boykin*, Stacy—under penalty of perjury—did flatly deny consenting to the electronic arbitration agreement.  He denied signing "any documents digitally" and asserted that he "physically signed each required document."  ECF No. 104-2, PageID.4836.  Stacy also claimed that he had "never seen" the electronically signed RISC and arbitration agreement that Ford attached to its motion to compel.  *Id.*, PageID.4837.  A reasonable factfinder could infer that if Stacy "had not seen the agreement, he had not signed it either."  *See Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795 (6th Cir. 2023) (finding that plaintiff's sworn denial that he saw the agreement created a genuine issue as to whether he signed it).

Ford next points to several documents with Stacy's handwritten signature, arguing that they that were timestamped in the hours before the RISC was electronically signed.  ECF No. 106, PageID.4883 (citing ECF

9

No. 106-2; ECF No. 106-3; ECF No. 106-4). But it is unclear whether the timestamps show when the documents were executed or when they were printed. *See, e.g.*, ECF No. 106-4, PageID.4899.

Lastly, Ford argues that Stacy can be bound to an unsigned arbitration agreement because he accepted the contract by obtaining financing and making payments. ECF No. 106, PageID.4885 (citing *Citizens Telecomms. Co. of W. Va. v. Sheridan*, 239 W. Va. 67 (2017); *Mitchell v. Cambridge Franchise Holdings, LLC*, 433 F. Supp. 3d 1064, 1071 (W.D. Ky. 2020)). But the cited cases are distinguishable. In *Mitchell*, the plaintiff provided a blanket denial that she saw or signed an arbitration agreement, but she failed to "explain how her electronic signature could have been placed on the Agreement using her confidential PIN," which was "required to sign into her account." 433 F. Supp. 3d at 1070. She also did not deny signing into her account, and she digitally signed several other policies through her account that day. *Id.* For Stacy, the RISC was the only electronic document, and no extra measures like a confidential PIN were required. *See* ECF No. 106-1; ECF No. 104-2.

In *Citizens*, an internet provider sought to compel arbitration, and the plaintiffs argued that there was no mutual assent when an arbitration provision was added to the provider's terms and conditions. 239 W. Va. at

10

71. The court enforced the arbitration clause, finding that the plaintiffs (1) had reasonable notice of the arbitration provision when they received a paper copy of the new terms in a billing statement and (2) assented to the changes by continuing to use the internet service after receiving notice. *Id.* at 74-75. In contrast, Stacy stated that he never saw or signed the RISC containing the arbitration provision.

Viewing the facts in a light most favorable to Stacy, Stacy's "unequivocal" statement that he signed only paper documents and never saw the RISC containing the arbitration agreement creates a question of fact that requires the parties to "proceed summarily to the trial" about whether an agreement was formed. *See* 9 U.S.C. § 4. When there is a factual dispute about the formation of an arbitration agreement, the court should hold the motion to compel arbitration in abeyance while it proceeds summarily to trial on the disputed factual questions.[1] *Boykin*, 3 F.4th at 844.

---

[1] The Court already entered a stipulated order amending its report and recommendation (R&R) to recommend that the motion to compel arbitration be held in abeyance pending a trial about the arbitration agreement. ECF No. 179. The Court files this amended R&R to prevent any confusion that could result from having the amendment stated only in a standalone filing.

### III. Conclusion

The Court thus recommends that Ford's motion to compel arbitration of Thermon Stacy, ECF No. 101, be **HELD IN ABEYANCE** and that the issue of contract formation proceed to trial.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: November 3, 2023

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 3, 2023.

                                          s/Marlena Williams
                                          MARLENA WILLIAMS
                                          Case Manager